**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| WOLFGANG WEISE,<br><br>Plaintiff,<br><br>vs.<br><br>U.S. DEPARTMENT OF STATE, *et al.*<br><br>Defendants. | **No. 26-cv-4422 (LJL)**<br>No. 24-cv-5760 (LJL) [related] |

**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND IN FURTHER SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

TABLE OF CONTENTS ........ i

TABLE OF AUTHORITIES ........ ii

ARGUMENT ........ 1

I. Preliminary Arguments ........ 1

II. Statutory Questions ........ 1

III. APA Violations ........ 4

IV. Due Process ........ 5

CONCLUSION ........ 6

# TABLE OF AUTHORITIES

**Cases**

*A.C.R. v. Noem*,
809 F. Supp. 3d 103 (E.D.N.Y. 2025) .......... 5

*Alhariri v. Blinken*,
2025 WL 1434317 (E.D.N.Y. May 19, 2025) .......... 3

*Biden v. Nebraska*,
600 U.S. 477 (2023) .......... 2

*Bittner v. United States*,
598 U.S. 85 (2023) .......... 2

*Cath. Legal Immigr. Network v. Rubio*,
No. 26-cv-00858 (JAV), 2026 WL 2455099 (S.D.N.Y. Aug. 21, 2026) .......... 4

*Citizens to Preserve Overton Park, Inc. v. Volpe*,
401 U.S. 402 (1971) .......... 1

*City of Arlington v. FCC*,
569 U.S. 290 (2013) .......... 1

*FCC v. NextWave Pers. Commc'ns Inc.*,
537 U.S. 293 (2003) .......... 4-5

*Fed. Defs. of N.Y. v. Fed. Bureau of Prisons*,
954 F.3d 118 (2d Cir. 2020) .......... 5

*Johnson v. Everyrealm, Inc.*,
657 F. Supp. 3d 535 (S.D.N.Y. 2023) .......... 2

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*,
591 U.S. 657 (2020) .......... 2

*New Jersey v. United States Dep't of Transportation*,
835 F. Supp. 3d 477 (S.D.N.Y. 2026) .......... 4

*Peters v. National Railroad Passenger Corp.*,
966 F.2d 1483 (D.C. Cir. 1992) .......... 5

*Salazar v. King*,
822 F.3d 61 (2d Cir. 2016) .......... 1

*Strom v. McMahon*,
No. 22 Civ. 4678 (JHR), 2025 WL 1746905 (S.D.N.Y. June 24, 2025) .................................... 3

*United States ex rel. Accardi v. Shaughnessy*,
347 U.S. 260 (1954) ........................................................................................................ 4, 5

*West Virginia v. EPA*,
597 U.S. 697 (2022) ............................................................................................................. 2

**Statutes**

5 U.S.C. § 701(a)(2) ................................................................................................................. 1

5 U.S.C. § 706(2)(B) ................................................................................................................. 5

5 U.S.C. § 706(2)(C) ................................................................................................................. 1

5 U.S.C. § 706(2)(D) ................................................................................................................. 5

22 U.S.C. § 2671 ....................................................................................................................... 3

22 U.S.C. § 2671(b)(1) .............................................................................................................. 3

22 U.S.C. § 2671(b)(2) .............................................................................................................. 2

22 U.S.C. § 2671(b)(2)(B) ......................................................................................................... 4

22 U.S.C. § 2671(d)(1) .............................................................................................................. 4

28 U.S.C. § 1346(a)(2) ............................................................................................................... 3

**Constitutional Provisions**

U.S. Const. amend. V ................................................................................................................ 5

**Regulations**

7 FAM 374.3(d) ......................................................................................................................... 1
7 FAM 374.4(e) ......................................................................................................................... 1
7 FAM 374.4(f) .......................................................................................................................... 1

**Other Authorities**

Government Accountability Office (GAO),
*The Use of Repatriation Loans for Travel* (B-202410, Sept. 29, 1981) ....................................... 3

Senate Rep. No. 98-143 (1983) ................................................................................................... 3

Plaintiff Wolfgang Weise ("Plaintiff" or "Weise") respectfully submits this reply memorandum of law in further opposition to Defendant U.S. Department of State's ("State" or "Department") motion to dismiss and for summary judgment, ECF No. 49 ("Def. Br."), and in further support of his cross-motion for summary judgment, ECF No. 51 ("Pl. Br."), and in reply to the Department's opposition, ECF No. 55 ("Opp.").

## ARGUMENT

### I. Preliminary Arguments

The Department renews its argument that the consular officer's decisions are committed to agency discretion by law. Def. Br. 11-13; *see* Opp. 11. Plaintiff has already explained why that is wrong, Pl. Br. 8-9. In short, the Court has law to apply.

As mentioned, 5 U.S.C. § 701(a)(2) is a "very narrow exception" reserved for the "rare instances" in which a statute is drawn so broadly that "there is no law to apply." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971). And whether the Department may charge a citizen for a third party's travel is not a question of discretion as much it is about the scope of an agency's authority. It is a question about the power Congress conferred, and an agency has no discretion to exceed that authority or boundary. *See City of Arlington v. FCC*, 569 U.S. 290, 297-98 (2013). Not to mention, the Department's own briefs provide ample law to apply. For example, the Department defends the escort's fee under 7 FAM 374.4(f), the second night of lodging and the MI&E under 7 FAM 374.4(e), and the absence of a new loan form under 7 FAM 374.3(d). *See also Salazar v. King*, 822 F.3d 61, 76 (2d Cir. 2016).

### II. Statutory Questions

The Department makes the breathtaking claim that it may impose an escort requirement on a citizen seeking consular assistance, decide unilaterally when such an escort is necessary,

and then bill the citizen for it. Def. Br. 11-13; Opp. 11. But "[t]he question here is not whether something should be done; it is who has the authority to do it." *Biden v. Nebraska*, 600 U.S. 477, 501 (2023).

There is nothing in the statute that gives the Department the authority to make expenditures on escorts for citizens' travel (whether in subsection (b) or (d), for that matter). The Department cannot point to any part of the text. Even though the word "escort" appears in the statute, Congress was not referring to citizens but to the President, Members of Congress, and other enumerated officials. Meaning, not only is there no textual anchor to support the Department's decision to impose a loan on Plaintiff, but Congress knew how to use the term and did so in the same paragraph. *See Bittner v. United States*, 598 U.S. 85, 94 (2023) ("When Congress includes particular language in one section of a statute but omits it from a neighbor, we normally understand that difference in language to convey a difference in meaning"); *see also Johnson v. Everyrealm, Inc.*, 657 F. Supp. 3d 535, 560 (S.D.N.Y. 2023) (same). Read as a whole, 22 U.S.C. § 2671(b)(2) is a list of the activities for which the Secretary may spend appropriated funds, and escorts appear only once.

Even assuming that that "for the citizen's return" language gives the Department broad discretion to decide what counts as for their return. Under that view, it follows the Department can decide whatever it calls necessary, package and issue it as a repatriation loan, and spend federal money any which way it wants. *See* ECF No. 51 at 11 (quoting *Little* Sisters). Suppose, for example, the Department issued a repatriation loan for a first-class ticket for a citizen to fly back to the United States. Under the government's logic, that loan is permissible because, after all, it is "for the citizen's return." *See West Virginia v. EPA* (2022) ("But of course almost anything could constitute such a "system"; shorn of all context, the word is an empty vessel.

Such a vague statutory grant is not close to the sort of clear authorization required by our precedents"). Textbook appropriations principles likewise cut against the Department's logic. *See generally Strom v. McMahon*, No. 22 Civ. 4678 (JHR), 2025 WL 1746905, at *9-10 (S.D.N.Y. June 24, 2025) (discussing authorities) ("No money 'can be paid out of the Treasury unless it has been appropriated by an act of Congress") (citation omitted).

Legislative history only reinforces that conclusion. Over the years, Congress has progressively cabined and set limits on the Department's authority and spending. Start with the 1956 version of section 2671: It speaks in very broad terms, allowing the Department to "'make expenditures, from such amounts as may be specifically appropriated therefor, for unforeseen emergencies arising in the diplomatic and consular service.'" The 1956 statute did not contain any enumerated limits until years later in 1983 after amendment. Following a "critical" GAO report in 1982 highlighted how the State Department "utilize[d] this account as a general purpose fund." *See, e.g.,* S. Rep. No. 98-143, at 25 (1983) ("A critical General Accounting Office report issued in 1982 indicated that the Department utilizes this account as a general-purpose fund") (emphasis added).; *cf.* GAO, *The Use of Repatriation Loans for Travel* (B-202410, Sept. 29, 1981), available at https://www.gao.gov/products/b-202410 (last accessed Sept. 15, 2026). Consequently, Congress added subsection (b)(1), outlining a four-part conjunctive limit.

Finally, the Department treats Plaintiff's signature on the loan application as somehow outcome determinative. But this is an APA claim, not a breach-of-contract claim. Meaning, his signature does not help the Department explain whether or not it had authority to impose the loan or include an escort's expenses. If anything, Plaintiff would likely have a separate contract remedy here. *See* 28 U.S.C. § 1346(a)(2); *Alhariri v. Blinken*, 2025 WL 1434317, at *8

(E.D.N.Y. May 19, 2025). In any event, the Department cannot rely on his capacity to sign while also claiming that his mental disabilities made him unable to travel without an escort.

### III. APA Violations

Section 2671(d)(1) expressly requires the Department to obtain a "verifiable address." It did not do so. By definition, neither "To be determined" nor an office where Plaintiff has never worked, lived, or received mail is a "verifiable address." For another, the Department's charges related to an escort (who was neither requested nor necessary) do not qualify as "for the return of the citizen." 22 U.S.C. § 2671(b)(2)(B). Here, an escort is not necessary "for the return of a citizen to the United States." Historically, Plaintiff has traveled alone—from the United States, across Europe, and Russia—without issue, and nothing in the record explains why that changed.[1] Plaintiff additionally asserted multiple FAM-related violations in his motion papers, and the Department has addressed some and overlooked others. *See* Pl. Br. 17-19. The Department also passed over *Accardi* entirely. For that reason, and as previously explained, the Court should take that silence as a concession and deem the arguments waived. Taken together, the FAM violations independently confirm the arbitrariness and capriciousness of the Department's actions.

Either way, the Department's actions are contrary to law under the APA. Agency action is contrary to law "where the agency does not act in accordance with the law governing that particular action," or where it acts "contrary to existing valid regulations." *New Jersey v. United States Dep't of Transportation*, 835 F. Supp. 3d 477, 512 (S.D.N.Y. 2026) (citing cases) (internal quotation marks omitted) (cleaned up). That reaches "any law, and not merely those laws that the agency itself is charged with administering." *Cath. Legal Immigr. Network v. Rubio*, No. 26-cv-

[1] Note that, after he returned to the United States, Plaintiff again was traveling independently, flying out of a Dallas airport, and in fact, that's how the government was able to physically confiscate his passport.

00858 (JAV), 2026 WL 2455099, at *13 (S.D.N.Y. Aug. 21, 2026) (quoting *FCC v. NextWave Pers. Commc'ns Inc.*, 537 U.S. 293, 300 (2003)). Each of these issues are independently actionable. "[W]here the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures," even where those procedures are "possibly more rigorous than otherwise would be required." *A.C.R.*, 809 F. Supp. 3d at 125; *see Fed. Defs. of N.Y. v. Fed. Bureau of Prisons*, 954 F.3d 118, 130 (2d Cir. 2020).

## IV. <u>Due Process</u>

The complaint asserted a Due Process claim under the Fifth Amendment. U.S. Const. amend. V. That violation also implicates the APA, because the Department's conduct is "contrary to constitutional right" and can be set aside on that basis as well. 5 U.S.C. § 706(2)(B), (2)(D). Separately, as mentioned, the Department's failure to comply with the Manual implicates *Accardi* and supplies an independent ground. Ultimately, however, the Court does not need to reach any of the constitutional questions if it can resolve the case on statutory or regulatory grounds, or the issues presented in *Weise I*.

On the merits, the Department's says its billings notices "were sent to the verified billing address that was provided to the State Department." Opp. 13. For that proposition, the Department's principally relies on *Peters v. National Railroad Passenger Corp.*, 966 F.2d 1483, 1486-87 (D.C. Cir. 1992). There, the court held that "an individual class member was afforded due process when counsel's class action mailing was sent to his correct street address but omitted his apartment number and used an incorrect zip code because due process requires only reasonable efforts, not guaranteed actual notice." That does not bear much similarity to the here, where Plaintiff had never been or had any connection to Baltimore before this litigation. Nor did the Department make "reasonable efforts" anyway.

**CONCLUSION**

For all these reasons, Plaintiff respectfully requests that the Court grant his cross-motion and deny the government's motion.

Dated: September 15, 2026

Respectfully,

*/s/ Sami Elamad*